UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

MELVIN WALKER,

        Plaintiff,               Case No. 2:13-cv-228

v.                                    Honorable Gordon J. Quist

MARY BERGHUIS,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff Melvin Walker, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Mary Berghuis, Michigan State Industries (MSI) Ray Coucke, MSI Supervisor

Kelly Cyr, MSI Supervisor Unknown Cress, Physician's Assistant Daniel Spitters, Dr. Badawi Abdellatif, and Legislative Ombudsman Keith Barber. In his complaint, Plaintiff alleges that he has been diagnosed as having Raynauds Syndrome, which is a disorder of the small blood vessels that feed the skin. Plaintiff states that his condition causes open sores on his fingertips and bleeding of his hands. Plaintiff states that the condition is enhanced when an individual is exposed to vinyl products and that it takes a long time for him to heal because of the poor quality and quantity of food served in the prison.

Plaintiff states that he was assigned to work in the MSI Commercial Laundry facility, which is in the same building as the MSI Vinyl Products Factory, so that Plaintiff was exposed to fumes from the factory on a daily basis. On September 16, 2011, Plaintiff notified Defendants Cyr and Coucke about his medical condition and showed them the open sores on the tips of his fingers. Plaintiff explained that he was having an allergic reaction to the latex gloves and asked Defendant Cyr to provide him with non-latex gloves. Defendant Cyr responded that MSI did not have any non-latex gloves and ordered Plaintiff to return to his job. Plaintiff reluctantly complied with the order. Plaintiff sought treatment at Health Care for his open sores on September 18, 2011, and was told to keep his sores clean and take Tylenol. On September 19, 2011, Plaintiff worked from 7:15 a.m. until 3:45 p.m., after which he again went to Health Care. Plaintiff was told to take Tylenol and keep his sores clean. Finally, after a week of working while in pain, Plaintiff saw Defendant Spitters, who stated that he would give Plaintiff a non-latex glove accommodation or, in the alternative, ensure that Plaintiff was placed in a job which did not require gloves.

On September 26, 2011, Defendant Coucke assigned Plaintiff to the clothing folding table, which did not require gloves. On September 27, 2011, Defendant Cyr ordered Plaintiff to move to the sorting table to sort feces and urine soaked clothing and to put on some latex gloves.

Plaintiff showed Defendant Cyr his hands and Defendant Cyr sent Plaintiff back to the Housing Unit for a lay-in from work. Defendant Cyr also called Officer Hawkins to have Plaintiff sent to Health Care. While he was at Health Care, Plaintiff was given a one month medical accommodation which exempted him from wearing latex gloves. On September 28, 2011, Plaintiff was placed back on the clothing folding table.

On October 3, 2011, Plaintiff's fingertips began to bleed again, causing him a great deal of pain. On October 6, 2011, Plaintiff contacted Health Care and was admitted for an evaluation. Plaintiff was scheduled for an appointment with the doctor on October 10, 2011, and was told to take Tylenol and keep his sores clean. Plaintiff was also given a "no work" restriction until October 24, 2011, on which date Plaintiff returned to work with non-latex gloves. Defendant Cyr called Plaintiff into his office and ordered him to the folding table without gloves. Plaintiff showed Defendant Cyr his medical accommodation for non-latex gloves. Defendant Cyr retaliated by placing Plaintiff on lay-in. Plaintiff fails to explain why he required gloves in order to work at the folding table on October 24, 2011, when he was previously able to fold clothes without the use of gloves.

Plaintiff states that a medical lay-in is a punishment tool used to deter inmates from avoiding work and that during a lay-in, the prisoner is required to stay in his cell except to use the bathroom and go to the mess hall for meals. While on lay-in, prisoners are not paid. In addition, prisoners on lay-in cannot use the telephone, the microwave, or the dayrooms. Basically, prisoners on lay-in are treated the same as prisoners on disciplinary sanction. When Defendant Cyr told Plaintiff he was on lay-in, he stated: "The doctor does not run anything in MSI. We are a separate entity and I run the plant." The next day, Defendant Abdellatif issued Plaintiff a special accommodation to wear gloves at his work assignment and to not be assigned to cold areas of the

plant. Defendant Abdellatif told Plaintiff that if Defendant Cyr did not honor his medical accommodation, he was to inform Defendant Abdellatif.

The next day, Plaintiff returned to work and gave Defendant Cress a copy of his medical accommodation. Defendant Cress looked at the accommodation and stated, "We do not honor any medical accommodation and you cannot wear gloves at the folding table."[1] Defendant Cress then sent Plaintiff back to his housing unit with a lay-in. On October 31, 2011, Plaintiff returned to work and Defendant Cyr met Plaintiff at the plant entrance. Plaintiff stopped and gave Defendant Cyr his medical accommodation. Defendant Cyr stated that he did not care what the doctor said, and that if Plaintiff refused to work without gloves, he would be terminated. Plaintiff states that when a prisoner is terminated from his job, he is forced to remain in his cell from the hours of 8 a.m. until 4 p.m, and is not placed on callout for any other activities. Plaintiff states that this is akin to being on top lock. Plaintiff asserts that a terminated prisoner is not allowed to apply for another job for at least 90 days, and that once a prisoner is "marked" as being terminated, finding other employment is difficult. Therefore, Plaintiff complied with the order and worked for four hours without gloves, which caused his fingers to start bleeding. When Defendant Cyr made rounds he observed Plaintiff's fingers and sent him back to the housing unit for a lay-in.

Defendant Abdellatif gave Plaintiff a work restriction from November 2, 2011, until December 16, 2011, so that his fingers could heal. Plaintiff returned to work on December 16, 2011, after his fingers had healed, and was immediately assigned to the "cold" area of the plant, where Plaintiff's hands and feet were submerged in cold water for hours at a time. This caused Plaintiff's hands and feet to throb with pain and by the end of the day, some of Plaintiff's fingers were cracked

---

[1]Plaintiff again fails to explain why he required gloves in order to work at the folding table, as folding items which are neither wet nor cold does not appear to involve any risk to Plaintiff's hands.

and bleeding. Plaintiff was in unbearable pain, but was afraid to complain because he did not want to be laid in or terminated. Defendants Cyr and Cress were making rounds and observed Plaintiff's fingers, so they sent Plaintiff back to the housing unit. Plaintiff asked to see Defendant Abdellatif, but his request was refused by Health Care, who told Plaintiff to submit a kite.

On December 19, 2011, Plaintiff returned to work and asked to see Defendants Cyr and Cress to discuss his health and safety concerns. Plaintiff was instructed to return to the clothing sorting table to sort urine and feces soaked clothing, after which he was ordered to work in the "cold" area of the plant. Plaintiff's fingers were bleeding at this point and he showed them to Defendants Cyr and Cress, who ordered Plaintiff to return to his job. Plaintiff begged not to be returned to his assignment and reminded Defendants Cyr and Cress of his accommodation. Defendant Cyr stated that they would not accept a medical accommodation. Defendant Cress then ordered Defendant Cyr to write a disobeying-a-direct-order misconduct on Plaintiff and had MDOC officers escort Plaintiff from the plant. Plaintiff was subsequently terminated from his job assignment and was given three days of top-lock and loss of good time as a penalty for the misconduct.

Plaintiff filed a grievance regarding the matter, which was denied. Plaintiff filed a step II appeal and Defendant Berghuis responded:

> Any future Work Supervisor should feel free to consult with Health Service staff if the prisoner attempts to use his Special Accommodation Notices (for being able to wear jersey gloves on assignment and / or not working in "cold" places) as an excuse for not working. The prisoner will be on Unemployable Status until such time as he accepts and fully and actively participates in a work assignment.

*See* Plaintiff's complaint, ¶ 25, docket #1-2.

Plaintiff appealed the denial of his grievance to step III, but never received a response. Plaintiff contacted Defendant Barber for assistance on January 19, 2012, and was informed that an investigation would be conducted on the matter. It was not until just prior to the filing of his complaint that Plaintiff discovered that Defendant Barber was on the MSI Board of Directors, so that there was a conflict of interest in Defendant Barber investigating on behalf of Plaintiff. Because Plaintiff has not been able to work, he does not have an income and cannot afford to pay for over-the-counter medications, vitamins, or lotions. Therefore, it took a long time for Plaintiff's fingers to heal.

Plaintiff claims that Defendants' conduct was deliberately indifferent to his serious medical condition in violation of the Eighth Amendment. Plaintiff seeks damages and equitable relief.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff asserts that Defendants failed to accommodate his medical condition in the employment setting. Plaintiff alleges that in order to maintain his employment, he was required to perform duties which adversely affected his health. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The

deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Initially, the court notes that Plaintiff is not required to work a prison job, nor is he entitled to such employment. Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming. *See Rhodes*, 452 U.S. at 348; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey*, 832 F.2d at 955; *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980).

Nor does state law create such an entitlement. Michigan's statutes and regulations give prison authorities complete discretion regarding programming assignments of prisoners. Michigan does not have statutes or administrative rules restricting the discretion of its prison administrators concerning such decisions. Under Michigan Department of Corrections regulations, prison authorities retain broad discretion regarding the assignment of prisoners to rehabilitative programs and work assignments. *See* MICH. DEP'T OF CORR., Policy Directives 05.01.100 and 05.02.112.

Therefore, Plaintiff was not required to continue working in the MSI Laundry Facility under conditions adverse to his health. Because the Constitution "does not mandate comfortable

prisons," failing to accommodate an inmate's medical condition during the performance of a prison job does not state an Eighth Amendment claim. *See Rhodes,* 452 U.S. at 347-49.

In addition, with regard to Defendants Abdellatif and Spitters, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Defendants Abdellatif and Spitters examined Plaintiff for his injuries, and prescribed a work accommodation and treatment for the injuries. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Finally, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could have been prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Berghuis, Coucke, and Barber were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Berghuis, Coucke, and Barber had in this action involve the denial of administrative grievances or the failure to act. Defendants Berghuis, Coucke, and Barber cannot be liable for such

conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants Berghuis, Coucke, and Barber are properly dismissed for lack of personal involvement.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: January 15, 2014　　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE